1  M. Craig Murdy
   Nevada Bar No. 7108
2  DOYLE BERMAN MURDY, P.C.
   3295 N. Fort Apache Rd., Suite 110
3  Las Vegas, Nevada 89129
   Telephone: (702) 873-1622
4  Attorneys for Defendants

5

6                    UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF NEVADA

8  EDWARD TEEMS,
                                        Case No.: 2:08-CV-00782-HDM-RJJ
9              Plaintiff,

10     vs.                              **DEFENDANTS' RESPONSE TO
                                        MOTION FOR PARTIAL SUMMARY
11 EDGEWATER GAMING, LLC, d/b/a         JUDGMENT DETERMINING THAT
   EDGEWATER HOTEL & CASINO;            DEFENDANTS HAD NO AUTHORITY
12 LARRY GENE MARSHALL, HARRY J.        TO DEMAND THE PLAINTIFF LEAVE
   COLLINS and DOES I-XX, jointly and   THE PREMISES (Doc. 11)**
13 severally,

14             Defendants.

15

16         Defendants, Edgewater Gaming, LLC, Larry Marshall and Harry Collins, by and

17 through undersigned counsel, hereby respond to Plaintiff's Motion for Partial Summary

18 Judgment Determining that Defendants Had No Authority to Demand the Plaintiff Leave the

19 Premises, and respectfully request that the same be denied for the following reason:

20
        1    The issue raised by Plaintiff's motion is not relevant to the causes of action
21           asserted in Plaintiff's Second Amended Complaint.

22      2.   If the issue raised by Plaintiff's motion is relevant to the causes of action
             asserted, Plaintiff has failed to exhaust the exclusive administrative/judicial
23           review procedure set forth in NRS 463.362 to 436.3668.

24      3.   Under Nevada law, a gaming licensee has an absolute right to restrict admission
             to the premises for any reason, or no reason, so long as the restriction is not based
25           on race, color, religion, national origin, ancestry, physical disability or sex.

26 ///

27 ///

28
   J:\EDSISS\DOCS\MSGL\005\PLEAD\EY2943.WPD

This Response is supported by the following Memorandum of Points and Authorities.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   LOCAL RULE 56-1 CONCISE STATEMENT OF MATERIAL FACT**

    A.   <u>Defendants Concise Statement of Facts</u>

    1.   On September 1, 2007, the Edgewater Hotel and Casino was open to the general public and access of the general public to gaming activities was not restricted in any manner except as may have been provided by the Nevada state legislature. (See Declaration of William Houtchens, attached hereto as Exhibit 1.)

    2.   On September 1, 2007, Plaintiff Edward Teems was participating in gaming activities at the Edgewater Hotel and Casino.  (See Exhibit 1.)

    3.   Edgewater Hotel and Casino personnel determined that Plaintiff's presence at the hotel and casino was no longer desired, and requested that he terminate all gaming activities and leave the premises. (See Exhibit 1.)

    4.   Plaintiff was not asked to leave the hotel and casino for any reason attributable to his race, color, religion, national origin, ancestry, physical disability or sex. (See Exhibit 1.)

    5.   Plaintiff has not alleged that he was asked to leave the premises for any reason attributable to race, color, religion, national origin, ancestry, physical disability or sex.

    6.   Subsequent to the request that Plaintiff Teems terminate his gaming activities and leave the premises an event occurred which resulted in Plaintiff Teems being detained by Edgewater Hotel and Casino security.

    7.   Plaintiff's Second Amended Complaint asserts eleven separated causes of action: 1) assault; 2) battery; 3) false imprisonment; 4) intentional infliction of emotional distress; 5) premises liability; 6) defamation; 7) abuse of process; 8) trespass to chattels and conversion; 9) fraud, theft, and conversion; 10) malicious prosecution; 11) violation of 42 USC 1983.

    8.   Plaintiff's Second Amended Complaint does not assert any cause of action on the basis that he was wrongfully denied access to Defendant's premises.

/ / /

B.    Plaintiff's Statement of Facts

Plaintiff's Statement of Facts is in accord with Defendants' Concise Statement of Facts. Plaintiff, however, suggests that he "was being ejected because he had won a lot of money and was recognized as an associate of an advantage gambler."  Plaintiff's Motion, p. 2.  There is no admissible evidence in support of the foregoing allegation.

The exhibit cited by Plaintiff in support of the allegation is a handwritten statement by Susan Ihnon, a Senior Executive Host with the Edgewater Hotel and Casino. Ms. Ihnon's statement is not supported by a foundational affidavit. Ms. Ihnon's statement indicates that "Mr. Teems was not someone I knew." Ms. Ihnon's statement indicates that she knew Randy McKay as an "advantage player."  There is no evidence regarding Ms. Ihnon's defintion of an "advantage player."  Plaintiff has not alleged in his Second Amended Complaint that he was wrongfully denied access to Defendant's premises.  Nor has Plaintiff submitted any affidavit stating the cause of, or his opinion why his admission to Defendant's premises was restricted. Thus, Plaintiff's unsupported statement as to why he may have been asked to leave the premises should not be considered by the court.

## II.    THE ISSUE RAISED BY PLAINTIFF'S MOTION

A.    The Nevada Courts Have Not Addressed the Specific Issue Raised By Plaintiff's Motion

Plaintiff frames the legal issue as follows:

Does a casino have a right to eject a patron for no reason other than a desire to do so, or is that right limited to the patron acting is a disorderly or disruptive manner.

Defendant would frame the issue as follows:

Does a Nevada gaming establishment have an absolute right to restrict admission to the establishment for any reason, or no reason, so long as the restriction is not based on race, color, national origin, physical disability, or sex.

Ignoring applicable Nevada law, arguing that an admittedly applicable statute does not apply, utilizing broad legal principals with little, if any, analysis, and employing a great deal of sophistry Plaintiff concludes:

1.      Plaintiff had a right to be on the premises of Edgewater in the form of a conditional license revocable only upon certain conditions, the conditions did not exist, and Edgewater had no ability to revoke that license and eject Plaintiff.[1]  Plaintiff's Motion, p. 4.

2.      Gaming licensees cannot avail themselves of the statutory ability to eject any person for any reason found at Nev. Rev. Stat. 207.200.  Plaintiff's Motion, p. 4.

3.      Under the common law Edgewater could not eject Plaintiff for any reason, and a legitimate reason not present in this case is a prerequisite to a lawful ejection.  Plaintiff's Motion, p. 7.

## III.   THE ISSUE RAISED BY PLAINTIFF'S MOTION IS NOT RELEVANT TO THE CAUSES OF ACTION ASSERTED

Plaintiff's motion request that the court enter an order:

[D]etermining the following:

Plaintiff had a license to be upon the premises of Edgewater.  Edgewater had no legal basis for ejecting plaintiff or demanding that the plaintiff leave the premises.  In demanding that the plaintiff leave, Edgewater violated the plaintiff's right to be on the premises.

Defendant is hard pressed to understand how the foregoing is relevant to any cause of action asserted by Plaintiff.  The only cause of action for which the foregoing could possibly be relevant is the cause of action based on 42 USC 1983.  However, the basis of the Plaintiff's 42 USC 1983 cause of action is that the "seizure of the plaintiff was unreasonable and illegal."  Plaintiff's Second Amended Complaint, paragraph 77.  Plaintiff has not, and is not asserting any claim that his admission to Defendant's premises was restricted based on a constitutionally suspect reason.  Plaintiff simply has not alleged any cause of action, or facts that would render the requested order relevant to any issue material to this action.

## IV.   PLAINTIFF HAS FAILED TO EXHAUST HIS EXCLUSIVE ADMINISTRATIVE AND JUDICIAL REMEDIES

A.      NRS 463.4076

NRS 463.4076 provides:

1. The admission of a patron to a gaming salon:

---

[1] Plaintiff's argument in this regard is based on *Commonwealth v. Power*, 48 Mass. 496 (1844). Plaintiff's Motion, p. 8 - 9.

(a) *May be* restricted on the basis of the financial criteria of the patron as established by the licensee and approved by the Board; *and*

(b) *Must not be* restricted on the basis of the race, color, religion, national origin, ancestry, physical disability or sex of the patron.

2. Any unresolved dispute with a patron concerning restriction of admission to a gaming salon shall be deemed a dispute as to the manner in which a game is conducted pursuant to NRS 463.362 and *must be resolved pursuant* to NRS 463.362 to 463.366. (Italics added).

NRS 463.3668(2) provides:

The judicial review by the district and supreme courts afforded in this chapter is the *exclusive method* of review of any actions, decisions and orders in hearings held pursuant to NRS 463.361 to 463.366, inclusive. Judicial review is not available for extraordinary common law writs or equitable proceedings. (Italics added).

In *Erickson v. Desert Palace, Inc.* 942 F.2d 694, 696 (9th Cir. 1991) a casino refused to pay a slot machine jackpot won by a patron under the legal age. 942 F.2d at 695. The patron filed an action in federal district court, and the casino filed a motion to dismiss. 942 F.2d at 695-6.

The Court noted:

NRS 463.362 to 463.366 provide for review of a casino's refusal to pay alleged winnings to a patron by the State Gaming Control Board (the "Board"). NRS 463.3662 to 463.3668 provide for review of the Board's decision by a Nevada District Court and by the State Supreme Court. NRS 463.3668(2) provides that judicial review by the state courts is the exclusive method for review of the Board's actions.

In light of the foregoing, the Court could only hold that: "The district court correctly held that NRS 463.361 to 463.3688 limits a plaintiff's recovery of a gaming debt to the exclusive administrative/judicial procedure contained therein." 942 F.2d at 696.

Pursuant to NRS 463.4076 "admission to a gaming salon is deemed a dispute as to the manner in which a game is conducted . . . *and must be resolved* pursuant to NRS 463.662 to 463.366." In *Erickson* the 9th Circuit specifically held that NRS 463.3668(2) provides that judicial review by the state courts is the exclusive method for review of the Board's actions pursuant to NRS 463.361 to 463.366. 942 F.2d at 695.

At bar, any issue pertaining to Plaintiff's admission to Defendant's premises is subject to the exclusive administrative/judicial procedures set forth in NRS 463.362 to 463.3668.

1   Consequently, this Court does not have jurisdiction to address the issue raised by Plaintiff's

2   motion.

3           B.      Anticipation of Plaintiff's Argument

4           Notwithstanding the fact that Plaintiff's motion completely ignored NRS 463.4076,

5   Defendant fully anticipates Plaintiff will argue that the two admission restrictions set forth in

6   subparagraphs (a) and (b)  are the only two restrictions allowed under Nevada law.  Defendant

7   believes that subparagraphs (a) and (b) merely provide the outer limits of restrictions on

8   admission to gaming salons.  NRS 463.4076 provides that admission to a gaming salon "*May*

9   *be restricted* on the basis of financial criteria . . .; and *Must not be restricted* on the basis of

10  race, color, religion, national origin, ancestry, physical disability, or sex."  If the NRS 463.4076

11  restrictions are the only restrictions allowed, admission could not be denied to the disorderly,

12  the intoxicated, persons posing security risks, persons of notorious or unsavory reputation,

13  cheaters, or excluded persons.[2]  Clearly, the Nevada legislature did not mean to suggest that

14  such persons were entitled to admission.

15          NRS 463.4076 simply provides that admission "*May be based* on financial criteria . . .

16  and *Must not be* restricted on the basis of the race, color, religion, national origin, ancestry,

17  physical disability or sex of the patron."  There is a lot of room between the "*May be based*"

18  and "*Must not be restricted . . .*"  That room includes, but is not limited to restriction for no

19  reason, so long as the lack or reason is not a pretext for a reason based on race, color, religion,

20  national origin, ancestry, physical disability or sex.

21  / / /

22  / / /

23

24

25

26          [2]  As discussed in section IX gaming establishments are subject to a wide variety of statutory, regulatory,
    and common law duties.  For example a licensee's license may be revoked or suspended for unsuitable methods
27  of operation.  A gaming establishment may be subject to tort liability for the criminal acts of a third person.
    Defendant would submit that given the duties and responsibilities imposed on a gaming establishment, the right to
    restrict admission for any reason other than race, color, religion, national origin, ancestry, physical disability to
28  sex is of paramount importance.

## V.   PLAINTIFF ADMITS THAT NRS 207.200 PROVIDES A BASIS TO EXCLUDE HIM FROM DEFENDANT'S PREMISES

### A.   Plaintiff Admits the Applicability of NRS 207.200

Under Nevada law a "any person who . . . remains upon any land or in any building after having been warned by the owner or occupant thereof not to trespass, is guilty of a misdemeanor."  Plaintiff admits in his motion that "Nev. Rev. Stat. 207.200 provides a **statutory** basis for excluding persons from gaming establishments."  Plaintiff's Motion, p. 5 (emphasis in original).

### B.   Nevada Case Law Re NRS 207.200

In *Scott v. Justice Court*, 84 Nev. 9, 435 P.2d 747, 748 (1968) Scott was charged with "disturbing the peace and 'wilfully and unlawfully remaining on the premises of Harvey's Resort Hotel and Casino after having been requested to leave by employees of the (hotel) on behalf of the owner.'"  At trial Scott was acquitted of disturbing the peace but found guilty of failing to leave the premises when requested to do so.  *Id.*

Scott then sought "a writ of prohibition to preclude the pronouncement of judgment and imposition of sentence upon a jury verdict finding him guilty of criminal trespass as defined by NRS 207.200."  435 P.2d at 749.   Scott's petition "rest[ed] upon the premise that the justice of the peace is without jurisdiction .  .  . since the cited statute does not embrace the circumstances of this case."  435 P.2d at 749-50.   The dissent indicates that Scott argued that NRS 207.200 did not apply to landowners who are in the business of inviting guests to their property in an anticipation of financial gain (hotels, resorts, casinos, etc.), but rather, only applied to landowners who are *not* in the business of inviting guests in anticipation of financial gain (agricultural and mining) 435 P.2d at 750.

The majority concluded otherwise, stating "We believe the complaint in this case charges a crime under that statute, that respondent court and judge had jurisdiction to try petitioner and upon a determination of his guilt to punish as permitted by law."  435 P.2d at 748.  Thus, Nevada recognizes that a landowner who invites guests onto their property in

anticipation of financial gain can simply request a guest to leave the premises, and if the guest fails to do so, the guest is guilty of criminal trespass.

Admittedly, in *Scott* the disturbing the peace charge suggest that there was a basis for asking Scott to leave the premises.  The issue of whether a guest could be asked to leave with, or without reason was not addressed in the decision.  By the same token, *Scott* clearly provides that NRS 207.200 is applicable to landowners that invite guests onto their property in anticipation of financial gain.

## VI.   NRS 207.200 IS APPLICABLE

As established above, Plaintiff recognizes that NRS 207.200 provides a basis for his exclusion from Defendant's premises, and is therefore, dispositive of his motion. Consequently, Plaintiff is left with no choice but to argue that NRS 207.200 does not apply.  In that regard, Plaintiff asserts:

1.     NRS 463.0129 requires gaming establishments to remain open to the general public.  Plaintiff's Motion, p. 4.

2.     NRS 463.0129 is a "statute specific to gaming licensees . . . [and] governs and supersedes [NRS 207.200].  Plaintiff's Motion, p. 5.

3.     NRS 207.200 has been repealed by implication by NRS 463.0129.  Plaintiff's Motion, p. 5 - 6.

4.     The statutory construction doctrine of *expressio unius est exclusio alterious* applies to NRS 463.0129(3) and therefore, "any statutory right of a casino to eject patrons from its casino no longer survives."  Plaintiff's Motion, p. 6.

B.     NRS 207.200

NRS 207.200 provides:

1.     Unless a greater penalty is provided pursuant to NRS 200.207, any *person* who, under circumstances not amounting to a burglary:

(a)     Goes upon the land or into any building of another with intent to vex or annoy the owner or occupant thereof, or the commit any unlawful act; or

(b)     Willfully goes or remains upon any land or in any building after having been warned by the owner or occupant thereof not to trespass, is guilty of a misdemeanor.  (Italics added).

NRS 207.200 is clear and concise:  "any person who . . . remains upon any land or in any building after having been warned . . . not to trespass is guilty of a misdemeanor."

C.     NRS 463.0129

NRS 463.0129(1)(e) provides:

1.     The legislature hereby finds, and declares to be the public policy of this state that: . . .

(e)     To ensure that gaming is conducted honestly, competitively and free of criminal and corruptive elements, all gaming establishments in this state must remain open to the general public and the access of the general public to gaming activities must not be restricted in any manner except as provided by the Legislature.

NRS 463.0129 provides that gaming establishments must remain open to the general public and that the general public's access to gaming activities must not be restricted in any manner except as provided by the legislature.  At bar, there is absolutely no evidence that the Defendant's premises were not open to the general public on September 1, 2007, or that the general public's access to gaming activities was restricted in any manner except as allowed by the legislature.  The fact of the matter is that a specific individual's (Plaintiff's) admission to Defendant's premises was restricted.  However, restricting the admission of a specific individual does not establish, indicate or even suggest that Defendant's premises were not open to the general public, or that the general public's access to gaming activities was restricted.

Plaintiff's argument that "open to the general public" requires admission of every specific individual is ludicrous.  If Plaintiff is correct, Defendant would not have the right to deny access to the disorderly, the intoxicated, persons posing security risks, persons of notorious or unsavory reputation, cheaters, or excluded persons.

*Butterworth v. Tropic Casino Cruises, Inc.*, 796 So.2d 1283 (2001) provides insight into the concept of "general public" in a scenario that is somewhat the reverse of the scenario at bar. In *Butterworth*, the Florida Attorney General sought an injunction restraining Tropic Casino Cruises, Inc. from operating a gambling cruise vessel.  796 So.2d at 1284.  Subject to certain

1    exceptions, the state of Florida prohibits the possession and use of gambling equipment.  796

2    So.2d at 1285.  One of the exceptions is for "persons who have registered under the Johnson

3    Act, and who do not display the gambling equipment to the general public."  *Id*.  The Florida

4    Attorney General argued that even if the exception applied, Tropic had "lost the protection of

5    the statute by violating the condition in the statute that gambling devices may not be 'displayed

6    to the general public.'"  *Id*.   In that regard, the Court noted that "the only persons allowed onto

7    the vessel, or even onto the wooden structure used for boarding the vessel, are crew members,

8    vendors, and patrons who have purchased tickets for the voyage."  796 So.2d at 1286.  The

9    "Court conclude[d] as a matter of law that these persons do not constitute the 'general public'

10   as those terms are used in the statute."  *Id*.

11         Defendant would submit that if a group of guests, employees, and vendors do not

12   constitute the "general public", neither does one specific individual.  Plaintiff, as an individual,

13   does not constitute the "general public" as that term is used in NRS 463.0129.  Therefore,

14   restricting Plaintiff's admission to Defendant's premises does not establish that the same were

15   not open to the general public in violation of NRS 463.0129.

16         D.    NRS 207.200 Is Very Specific

17         Plaintiff argues that as "a statute specific to gaming licensees, Nev. Rev. Stat.

18   463.0129.1(e) governs and supersedes the general statute found at Nev. Rev. Stat. 207.200."

19   Plaintiff's Motion, p. 5.  Defendant freely acknowledges that the rules of statutory construction

20   provide that a specific statute takes precedence over a general statute.  *SIIS v. Surman*, 103

21   Nev. 366, 368, 741 P.2d 1357 (1987).  By the same token, the rules of statutory construction

22   provide that statutes should be read in harmony.  *Szydel v. Markman*, 121 Nev. 453, 457, 117

23   P.3d 200, 202-3 (2005).

24         NRS 463.0129 is a broad general statute setting forth Nevada public policy concerning

25   gaming, and provides in part that "gaming establishments in this state must remain open to the

26   general public and the access of the general public to gaming activities must not be restricted in

27   any manner except as provided by the legislature."  NRS 463.0129 is just one of approximately

28   363 statutes found in the Nevada Gaming Control Act.  NRS 463.010 et seq.

1  NRS 207.200 however is specific statute pertaining to the unlawful trespass by "any

2  person who . . . remains upon any land or in any building after having been warned by the

3  owner or occupant thereof not to trespass."  NRS 207.200 necessarily pertains to a specific

4  person, at a specific location, after a specific event has occurred (being warned not to trespass).

5  Thus, Defendant would submit that NRS 207.200 is the specific statute and controls the

6  incident which is the subject of this action.

7  "Statutes with a protective purpose should be liberally construed in order to effectuate

8  the benefits intended to be obtained."  *Colello v. Administrator*, 100 Nev. 344, 347, 683 P.2d

9  15, 17 (1984).  Defendant would submit that the protective purpose of NRS 207.200 is to

10  secure the quiet and peaceful enjoyment of real property.  The quiet and peaceful enjoyment of

11  a gaming establishment is of paramount importance in light of the licensee's various statutory

12  and common law duties.[3]

13  Even if NRS 463.0129 and NRS 207.200 are in conflict, that does not necessarily mean

14  that NRS 207.200 is not applicable.  "When two statutes are clear and ambiguous but conflict

15  with each other when applied to a specific factual situation, an ambiguity is created and [the

16  Nevada courts] will attempt to reconcile the statutes.  *Szydel v. Markman*, 121 Nev. 453, 457,

17  117 P.3d 200, 202-3 (2005).  "In doing so, [the Nevada courts] will attempt to read the

18  statutory provisions in harmony, provided that this interpretation does not violate legislative

19  intent."  *Id.*  Defendant does not believe NRS 463.0129 and 207.200 are in conflict.  However,

20  even if they are in conflict they can be read in harmony: NRS 463.0129 requires gaming

21  establishments to be open to the general public, and NRS 207.200 allows a landowner to refuse

22  access to a specific individual.  Reading the statutes in harmony, a gaming establishment can be

23  open to the general public, and at the same time a specific individual's admission may be

24  restricted.

25  E.     NRS 207.200 Has Not Been Repealed By Implication

26  Plaintiff argues that:

27

28  [3]  For example, a landowner could be subject to liability for failing to provide adequate security.  The
Nevada Gaming Control Board may discipline a gaming licensee for many reasons including but not limited to:

1.     Following the passage of Nev. Rev. Stat. 463.0129, Nev. Rev. Stat. 207.200 was "repealed . . . as concerns gaming."  Plaintiff's Motion, p. 5-6.

2.     "By expressly mentioning that the language does not abrogate or abridge "common law" authority to exclude, Nev. Rev. Stat. 463.0129.3 necessarily abrogates and abridges "statutory authority.""  Plaintiff's Motion, p. 6.

3.     Because "Nev. Rev. Stat. 463.0129 expressly states that it does not supersede "**common law**" rights to exclude . . . any statutory right of a casino to eject patrons no longer survives."  Plaintiff's Motion, p. 6.

Plaintiff's argument in support of the foregoing is two-fold: 1) NRS 463.0129 and NRS 207.200 are basically inconsistent, and NRS 207.200, being the earlier statute has been repealed by implication; 2) Pursuant to the rule of statutory construction known as *expressio unius est exclusio alterious* the statutory right of a casino to eject patrons no longer survives. Plaintiff's Motion, p. 6.

Plaintiff, citing *Southern Nevada Telephone Co. v. Christofferson*, 77 Nev. 322, 363 P.2d 96 (1961), argues that "under Nevada substantive law a later statute that is *basically inconsistent* with an earlier statute impliedly repeals the earlier statute with respect to the inconsistency."  Plaintiff's Motion, p. 6  (italics added).  Plaintiff then concludes that because NRS 463.0129 requires gaming establishments to remain open to the general public, NRS 207.200 has been repealed by implication.

NRS 463.0129 and NRS 207.200 are not "basically inconsistent."  In fact, the two statutes are entirely consistent.   If NRS 463.0129(1)(e) said that gaming establishments must remain open to "all individuals," to "every person," or to "each specific member of the general public" then the same would be basically inconsistent with NRS 207.200.  Under such a scenario NRS 207.200 may have been repealed by implication.  Again, Defendant would submit that a gaming establishment can be open to the general public, while at the same time the admission of a specific individual may be restricted.  Therefore, the two statutes are not basically inconsistent.

1    In any event, Plaintiff's analysis of repeal by implication is incomplete.  In *Washington*

2    *v. State*, 117 Nev. 735, 30 P.3d 1134 (2001) the Nevada Supreme Court addressed repeal by

3    implication and noted:

> When a subsequent statute entirely revises the subject matter contained in a prior statute,
> and the legislature intended the prior statute to be repealed, the prior statute is repealed
> by implication.  *This practice is heavily disfavored*, and we will not consider a statute
> repealed by implication unless there is no other reasonable construction of the two
> statutes.  In making this determination, we look to the text of the statutes, legislative
> history, the substance of what is covered by both statutes, and when the statutes were
> amended.

8    30 P.3d at 739 (italics added).

9    Defendant would emphasize that the practice of repeal by implication is "*heavily*

10   *disfavored*."  *Id*.  Plaintiff's motion does not address the legislative history, or the various

11   amendments to the NRS 207.200 and 463.0129.  Plaintiff's motion merely cites the text of the

12   two statutes, and only discusses the substance of the statutes in extremely general terms.

13   Having failed to address the legislative history and amendments of the two statutes, Plaintiff's

14   repeal by implication argument is not supported by a substantive memorandum of points and

15   authorities.  Defendant should not be required to blindly respond to Plaintiff's incomplete

16   motion.  Defendant would note that NRS 207.200 has been a part of Nevada jurisprudence for

17   approximately 97+ years.  Section 500 of the Nevada Criminal Practice Act of 1911 was the

18   predecessor of NRS 207.200.  Defendant would submit that the repeal of a statute that has been

19   part of Nevada jurisprudence for 97+ years should not be lightly undertaken.

20   Plaintiff argues that: "By expressly mentioning that the language does not abrogate or

21   abridge 'common law' authority to exclude. Nev. Rev. Stat. 463.0129.3 necessarily abrogates

22   and abridges statutory authority."  Plaintiff's Motion, p. 6.  Plaintiff's argument is based on the

23   doctrine of *expressio unius est exclusio alterious.  Id*.

24   NRS 463.0129(3) provides:

25   This section does not:

26   (a) Abrogate or abridge any common law right of a gaming establishment to exclude any
     person from gaming activities or eject any person from the premises for any reason; or

27
28   (b) Prohibit a licensee from establishing minimum wagers for any gambling game or slot
     machine.

As will be established below, the common law provides Defendant with an absolute right to exclude.  NRS 463.0129(3) specifically acknowledges and recognizes this common law right by expressly mentioning that the section "does not: . . . Abrogate or abridge *any common law right . . . to . . . eject any person from the premises for any reason*."  Any reason, of course includes no reason.  There would be no reason to state that the statute does not abrogate a common law right to eject without reason if such a right did not exist.

NRS 463.0129(3) provides that the section does not: 1) abrogate or abridge common law rights; or 2) prohibit a licensee from establishing minimum wagers.  Clearly, the context of NRS 43.0129 is simply the affirmation of two facts, and not an attempt to list all the exclusions, rights, duties, etc. that are not affected.  Defendant would submit that an affirmation of the applicability of the common law is not a renunciation of any applicable statutes, and therefore, *expressio unius est exclusio alterious* is not applicable.

As stated by Professor Dickerson:

> Several Latin maxims masquerade as rules of interpretation while doing nothing more than describing results reached by other means. The best example is probably *expressio unius est exclusio alterius,* which is a rather elaborate, mysterious sounding, and anachronistic way of describing the negative implication. Far from being a rule, it is not even lexographically correct because it is simply not true, generally, that the mere expressed conferral of a right or privilege in one kind of situation implies the denial of the equivalent right or privilege in other kinds. Sometimes it does and sometimes it does not, and whether it does or does not depends upon the particular circumstances of context. Without contextual support, therefore, there is not even a mild presumption here. Accordingly, this maxim is at best a description, after the fact, of what the court has discovered from context.

Reed Dickerson, *The Interpretation and Application of Statutes* 234-35 (1975) (citations omitted).

## VII. AMAZINGLY, PLAINTIFF'S COMMON LAW ARGUMENT ACTUALLY SUPPORTS DEFENDANT'S RIGHT TO EXCLUDE PLAINTIFF WITHOUT ANY REASON

A.   <u>Plaintiff's Argument</u>

As Plaintiff acknowledges, NRS 463.0129(3) provides:

This section does not:

(a) Abrogate or abridge any common law right of a gaming establishment to exclude any person from gaming activities or eject any person from the premises of the establishment for any reason; . . .

Plaintiff's Motion, p. 5.

Plaintiff then argues:

1. "The common law applied in Nevada is the common law as it existed in 1864."

2. "Under the common law Edgewater had no right to exclude Plaintiff"

3. "Businesses open to the public have no right under the common law to exclude a patron for any reason."

Every one of Plaintiff's arguments is wrong. Amazingly, Plaintiff's argument in support of the common law, unequivocally supports Defendant's right to exclude Plaintiff without reason.

B.   Plaintiff Is Simply Wrong When He Argues That The Common Law Applied in Nevada Is the Common Law as it Existed in 1864

Citing *Cheung v. Eighth Judicial District*, 121 Nev. 867, 124 P.3d 550, 553 (2005) Plaintiff argues that "the common law applied in Nevada is the common law as it existed in 1864." Plaintiff's Motion, p. 7.

In *Cheung* the court "consider[ed] whether Nevada's Constitution includes a right to a jury trial in small claims court." 124 P.3d at 551. In *Chueng* the Court noted:

The Nevada Constitution guarantees the right to trial by jury and that the jury trial right shall remain inviolate forever.[11] The jury trial right, however, applies as it did under the common law in existence at the adoption of the Nevada Constitution in 1864.[12]

124 P.3d at 553.

Footnote 11 to *Cheung* cited Article 1, § 3 of the Nevada Constitution which provides:

The right of trial by Jury shall be secured to all and remain inviolate forever; but a Jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law; and in civil cases, if three fourths of the Jurors agree upon a verdict it shall stand and have the same force and effect as a verdict by the whole Jury, Provided, the Legislature by a law passed by a two thirds vote of all the members elected to each branch thereof may require a unanimous verdict notwithstanding this Provision.

Clearly, *Cheung* and Article 1, § 3 do not provide that the common law as of 1864 is applicable to Plaintiff's claims. *Chueng* and Article 1 § 3 simply apply to the right to a jury trial.

Plaintiff's motion, in passing, cites NRS 1.030 in support of his argument that the common law as of 1864 applies to his claims: "The common law precedent closest in time to Nevada becoming a state and adopting NRS 1.030 (recognizing the common law) appears to be found in *Commonwealth v. Power*, 48 Mass. 596 . . ."  Plaintiff's Motion, p. 7-8.

NRS 1.030 provides:

> The common law of *England as far as it is not repugnant to or in conflict* with the Constitution and laws of the United States, or the constitution and laws of this state, shall be the rule of decision in all courts of this State.  (Italics added).

NRS 1.030 provides that the "common law of *England* . . . shall be the rule of decision in all courts of this State.  Thus, the common of law of England *could* be applicable to this action.  Defendant would submit that the 1844 Massachusetts case hand selected by Plaintiff's counsel has no applicability to the resolution of the issues before this court.  Furthermore, the common law of England is only applicable "as far as it is not repugnant to or in conflict with the Constitution and laws of the United States, or the constitution and laws of [Nevada]."  NRS 1.030.

C.   The English Common Law Provides Defendant With an Absolute Right of Exclusion

Amazingly, one of the cases cited in Plaintiff's motion unequivocally establishes that the English common law provided for an absolute right of exclusion.  *See*, *Uston v. Resorts Int'l Hotel, Inc.*, 89 N.J. 163, 171-2, 445 A.2d 370, 374 (1982) cited in Plaintiff's motion at p. 9.  In *Uston* the Court noted:

> At one time, *an absolute right of exclusion prevailed in this state*, though more for reasons of deference to the noted *English precedent* of *Wood v. Leadbitter*, 13 M&W 838, 153 Eng.Rep. 351 (Ex. 1985), than for reasons of policy.  In *Shubert v. Nixon Amusement Co.*, 83 N.J.L. 101, 83 A. 369 (Sup.Ct.1912), the former Supreme Court dismissed a suit for damages resulting from plaintiff's ejection from defendants' theater.  Noting that plaintiff made no allegation of exclusion on the basis of race, color or previous condition of servitude, the Court concluded:

> In view of the substantially uniform approval of, and reliance on, the decision in *Wood v. Leadbitter*, in our state adjudications, it must fairly be considered to be adopted as part of our jurisprudence, and whatever views may be entertained as to the natural justice or injustice of ejecting a theater patron without reason after he has paid for his ticket and taken his seat, we feel constrained to follow that decision as the settled law.

1    Thus, if the English common law applies to this action, Defendant had an absolute right

2    to restrict Plaintiff's admission for any reason.

3    Other jurisdictions have upheld the common law right of a premise owner to exclude

4    patrons without reason or justification so long as the exclusion was not based on race, creed,

5    color or national origin. *See e.g. Brooks v. Chicago Downs Assoc.*, 791 F.2d 512 (7th Cir. 1986),

6    *Madden v. Queens County Jockey Club*, 296 N.Y. 249, 72 N.E.2d 697 (1947) and *People v.*

7    *Licata*, 28 N.Y.2d 113, 268 N.E.2d 787 (1971).

8

9    **VIII.   USTON IS OF NO PRECEDENTIAL VALUE**

10    Plaintiff cites *Uston v. Resorts Int'l Hotel, Inc.,* 89 N.J. 163, 445 A.2d 370 (N.J.1982) in

11    support of his motion and spends six rambling pages, including references to Jim Crow,

12    discussing the same.  *Uston*, being a New Jersey case, has little, if any, precedential value with

13    respect to this Nevada action.  To the extent *Uston* has any precedential value, Defendant

14    would simply cite *Brooks v. Chicago Downs Assoc., Inc.*, 791 F.2d 512 (7th Cir. 1986) in

15    opposition.

16    A.    <u>Uston - The Bottom Line</u>

17    Kenneth Uston was a renowned blackjack card counter.  445 A.2d at 371.  Resorts

18    sought to exclude Uston from the blackjack tables in Resorts' casino.  *Id.*  The New Jersey

19    Supreme Court held that the Casino Control Commission, and not Resorts, had the authority to

20    determine whether card counters could be excluded.[4] 445 A.2d at 372.  Consequently, the

21    Court held that it "need not decide the precise extent of Resorts' common law right to exclude

22    patrons for reasons not covered by the act."  *Id.*  With regard to the common law right to

23    exclude, the Court held that the same is "limited by a competing common law right of

24    reasonable access to public places" and the issue of whether "a decision to exclude is

25    reasonable must be determined from the facts of each case."  445 A.2d at 372 and 375.  Thus,

26

27    _____

28    [4] Obviously the New Jersey Casino Control Act has no applicability to this action.  The Nevada Gaming Control Act is applicable.  However, Plaintiff failed to provide a comprehensive analysis of the same.

1   New Jersey appears to have adopted a "reasonableness" limitation on access to public places.

2   However, the law of New Jersey is not the law of Nevada.

3       As indicated above, the *Uston* Court also specifically noted that "At one time, an

4   absolute right of exclusion prevailed in this state, . . . [in] deference to the noted English

5   precedent of *Wood v. Leadbitter . . .*"  445 A.2d at 374.

6       B.   Brooks - The Bottom Line

7       In *Brooks,* the 7th Circuit noted that "This a case of first impression on whether under

8   Illinois law the operator of a horse race track has the absolute right to exclude a patron from the

9   track premises for any reason, *or no reason, except* race, color, creed, national origin, or sex."

10  791 F.2d at 513 (italics added).  The 7th Circuit found "that Illinois follows the *common law*

11  rule and would allow the exclusion." *Id* (italics added).  In holding that Illinois follows the

12  traditional common law rule the 7th Circuit noted that:

13          What the proprietor of a race track does not want to have to do is *prove or explain* that
            his reason for exclusion is a *just* reason.  He doesn't want to be liable to [patron] solely
14          because he mistakenly believed he was a mobster, The proprietor wants to be able to
            keep someone off his private property even if they only *look like* a mobster.  As long as
15          the proprietor is not excluding the mobster look alike because of his national origin (or
            because of race, color, creed, or sex), then the common law, and the law of Illinois
16          allows him to do just that.

17      The 7th Circuit also addressed *Uston,* noting "We also choose not to follow the arguable

18  - but not clear - abandonment of the common law rule in New Jersey in the Case of *Uston . . .*"

19  791 F.2d at 517.

20      C.   NRS 207.200, Uston and Jim Crow

21      In his analysis of *Uston,* Plaintiff argues that NRS 207.200 has "the badges of 'Jim

22  Crow" legislation and allows institutionalized discrimination.  Plaintiff's Motion, p. 14 -15.

23  Plaintiff's argument is without merit.  As discussed above and below, Nevada law prohibits

24  admission restrictions based on race, color, religion, national origin, ancestry, physical

25  disability or sex.  *See also*, NRS 651.070 which provides:  "All persons are entitled to the full

26  and equal enjoyment of the goods services, facilities, privileges, advantages and

27  accommodations of any place of public accommodation, without any discrimination or

28  segregation on the ground of race, color, religion, national origin or disability."  Nevada has a

very strong and clear anti-discrimination policy.  Plaintiff's attempt to argue any vestige of Jim Crow is without merit.  Plaintiff does not, and has not alleged that he falls within any protected class of person.

## IX.   THE CASES, STATUTES AND REGULATIONS IGNORED BY PLAINTIFF

Quite amazingly, Plaintiff's motion ignores applicable cases, statutes and regulations. When one reads between the lines, the real gist of Plaintiff's motion is that he falls within a protected class of person who cannot be denied access to gaming establishment.  The apparent protected class of person to which Plaintiff allegedly belongs is that of the advantage gambler. Plaintiff of course, cannot and does not support any legal authority in support of such any such protected class of persons.

A.   Spilotro v. State

In *Spilotro v. State*, 99 Nev. 187, 661 P.2d 467 (1983) the Nevada Supreme Court addressed access to gaming establishments in the context of a person who had been placed on a list of persons to be excluded or ejected from Nevada gaming establishments.[5]  The Nevada Supreme Court noted:

> Appellant does not have a constitutional right of access to businesses, such as casinos, that are generally open to the public. [citations omitted].  He does not allege that the State listed him because of his race, religion, national origin, or any other constitutionally suspect reason. [citations omitted].  Therefore, appellant has not been denied any right of "access to public places."

The *Spilotro* Court also noted that:  "He does not allege that the State listed him because of his race, religion, national origin, or other constitutionally suspect reason. . . .  Therefore, appellant has not been denied any right of 'access to public places.'"  661 P.2d at 472.  At bar, Plaintiff has not alleged that his admission was restricted on the basis of race, religion, national origin, or other constitutionally suspect reason.  Therefore, Plaintiff, who does not have a

---

[5]  NRS 463.151 provides in part: "1.  The legislature hereby declares that the exclusion or ejection of certain persons from licensed gaming establishments . . .  is necessary to effectuate the policies of this chapter and to maintain effectively the strict regulation of licensed gaming. . . .  4.  Race, color, creed, national origin or ancestry, or sex may not be grounds for placing the name of a person upon the list.

constitutional right of access to casinos, has not been denied any right of "access to public places."

According to the United States Supreme Court "gambling - implicates no constitutionally protected right; rather it falls into a category of vice activity that could be and frequently has been banned altogether." *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 426, 113 S.Ct. 2696, 2703, 125 L.Ed.2d 345 (1993). *See also, In Matter of S.D.*, 399 N.J. Super. 107, 122, 943 A.2d 188, 197 (N.J. Super. A.D. 2008) (recognizing that "S.D. has no fundamental right to gamble constitutionally or statutorily.").

B.   Lyons v. State

In *Lyons v. State*, 105 Nev. 317, 321, 775 P.2d 219, 222 (1989) the Nevada Supreme Court noted that "patrons who are specially gifted and can increase the odds in their favor by 'card counting' . . . or who notice and take advantage of a dealer's habit of play that will occasionally provide an unintended view of the dealers cards" are not subject to prosecution under NRS 465.015 which prohibits cheating. *However*, the Court noted that "casino management may take measures to deny them the right to play." *Id*. One such method would be withdraw the patrons invitation pursuant to NRS 207.200.

Thus, the Nevada Supreme Court has specifically held that there is no "constitutional right of access to businesses, such as casinos, that are generally open to the public" and in dicta has indicated that "casino management may take measures to deny [card counters and specially gifted patrons] the right to play." *Spilotro,* 661 P.2d at 486*, and Lyons*, 775 P.2d at 222.

C.   The Nevada Gaming Act Provides that Access to Gaming Establishes May Be Restricted

Several sections of the Nevada Gaming Act provide that gaming licensees may restrict admission to a gaming establishment. These same statutes and regulations also provide that admission may not be restricted on the basis of race, color, religion, national origin, physical disability, or sex.

1    As established above, NRS 463.4076 provides that admission to a gaming salon "*May*

2    *be* restricted on the basis of the financial criteria . . . and . . . *Must not be* restricted on the basis

3    of the race, color, religion, national origin, ancestry, physical disability or sex of the patron.

4        NRS 463.15995 provides that a gaming licensee may charge a fee for admission to an

5    area where gaming is conducted.  NRS 463.15995(c)(6)  provides that a gaming licensee that

6    charges a fee "[s]hall not restrict admission to the area for which a fee for admission is charged

7    to a patron on the ground of race, color, religion, national origin or disability of the patron . . ."

8    *See also,* Nevada Gaming Control Regulation 5.210.[6]

9        NGCR 5.200 provides for the licensing and operation of an international gaming salon.

10   An "international gaming salon" is defined as "an enclosed gaming facility that is located

11   anywhere on the property or resort hotel that holds a nonrestricted gaming license, admission to

12   which is based upon the financial criteria of the primary patron as established by the licensee

13   and approved by the board."  NGCR 5.200(1)(d).  Access to international gaming salons cannot

14   be "based upon the race, color, religion, national origin, ancestry, physical disability, or sex of

15   the patron."  NGCR 5.200(3)(f).

16       D.    Nevada Gaming Regulations

17   NGCR 5.010 provides, in part:

18   1.    It is the policy or the Commission and the Board to require that all
           establishment wherein gaming is conducted in this state be operated in a

19         manner suitable to protect the public health, safety, morals, good order and
           general welfare of the inhabitants of the State of Nevada. \

20

21   2.    Responsibility for the employment and maintenance of suitable methods of
           operation rests with the licensee, and wilful or persistent useor toleration of

22         methods of operation deemed unsuitable will constitute grounds for license
           revocation or other disciplinary action.

23   Nevada Gaming Commission Regulation 5.011 provides in part:

24   The Board and the Commission deem any activity on the part of any licensee, his
     agents or employees, that is inimical to the public health, safety, morals, good

25   order and general welfare of the people of the State of Nevada, or that would

26   _____

27   [6]  NGCR 5.210 provides for the imposition of a fee to gain access to areas of a gaming establishment.
     NGCR 5.210(7)(b) provides that a gaming establishment may not "[r]estrict admission to the area for which a fee
     for admission is charged to a patron on the grounds of race, color, religion, national origin, or disability of the
     patron."

28

reflect or tend to reflect discredit upon the State of Nevada or the gaming industry, to be an unsuitable method of operation and shall be grounds for disciplinary action by the Board and the Commission in accordance with the Nevada Gaming Control Act and the regulations of the Board and the Commission. Without limiting the generality of the foregoing, the following acts or omissions may be determined to be unsuitable methods of operation:

1.   Failure to exercise discretion and sound judgment to prevent incidents which might reflect on the repute of the State of Nevada and act as a detriment to the development of the industry.
. . .
5.   Catering to, assisting, employing or associating with, either socially or in business affairs, persons of notorious or unsavory reputation or who have extensive police records, or person who have defied Congressional investigative committees, or other officially constituted bodies acting on behalf of the United States, or any state, or persons who are associated with or support subversive movements, or the employing either directly or through a contract, or any other means, of any firm or individual in any capacity where the repute of the State of Nevada where the gaming industry is liable to be damaged because of the unsuitability of the firm or individual or because of the unethical methods of operation of the firm or individual.
. . .
10.  Failure to conduct gaming operations in accordance with proper standards of custom, decorum or decency, or permit any type of conduct in the gaming establishment which reflects or tends to reflect on the repute of the State of Nevada and act as a detriment to the gaming industry.

NGCR 5.030 provides:

Violation of any provision of the Nevada Gaming Control Act or of these regulations by a licensee, his agent or employee shall be deemed contrary to the public health, safety, morals, good order and general welfare of the inhabitants of the State of Nevada and grounds for suspension or revocation of a license. Acceptance of a state gaming license or renewal thereof by a licensee constitutes an agreement on the part of the licensee to be bound by all of the regulations of the commission as the same now are or may hereafter be amended or promulgated. It is the responsibility of the licensee to keep himself informed of the content of all such regulations, and ignorance thereof will not excuse violations.

Thus, unsuitable methods of operation are grounds for disciplinary action against a licensee.  Any activity by that is inimical to the public health, safety, morals or good order and general welfare, or that would reflect or tend to reflect discredit upon the State of Nevada or the gaming industry are deemed unsuitable methods of operation, and would subject a gaming licensee to disciplinary action.

///

E.     Tort Liability

Under Nevada law, a landowner owes an invitee a duty to use reasonable care to keep the premises in a reasonably safe condition for use.  *See, Doud v. Las Vegas Hilton Corp.*, 109 Nev. 1096, 1101, 864 P.2d 796, 799 (1993) and *Elko Enterprises, Inc. v. Broyles*, 105 Nev. 562, 565, 779 P.2d 961, 964 (1989).  In *Doud* the Nevada Supreme Court recognized a negligent security cause of action pursuant to which the landowner could be held liable for the criminal acts of third persons committed against patrons.  864 P.2d at 798 - 802.  In *Elko Enterprises* the Nevada Supreme Court recognized an affirmative duty to warn or protect patrons against the criminal acts of third persons.

The mere fact that gaming establishments may be held liable in tort for the criminal acts of third persons, weighs heavily in favor the right to restrict admission for no reason, so long as the lack of reasons is not a pretext for a reason based on race, color, religion, national origin, ancestry, physical disability or sex.

## X.     CONCLUSION

Plaintiff's motion is without merit on multiple levels.  The issue raised by Plaintiff's motion is subject to the exclusive administrative/judicial remedies set forth in NRS 463.361 to 463.3668. The issue raised by the motion is not relevant to any cause of action asserted.  Even if the issue raised by Plaintiff's motion is relevant, and is not subject to the exclusive administrative/ judicial remedies of NRS 463.361 et seq., Defendant possess an absolute right to restrict plaintiff's admission for no reason whatsoever, so long as the lack of reason is not a pretext for a reason based on race, color, religion, national origin, ancestry, physical disability or sex.

The license of a gaming establishment can be suspended or revoked if the establishment engages in an unsuitable method of operation.  A gaming establishment can be held liable in tort for the criminal acts of third persons.  Given the statutory, regulatory, and common law duties and responsibilities of a gaming establishment, the right to restrict admission without reason is of paramount importance.

English common law provided for an absolute right of exclusion.  NRS 207.200 provides for an absolute right of exclusion.  The Nevada Gaming Control Act provides for restricted admission so long as the same is not based on race, color, religion, national origin, ancestry, physical disability or sex.  A gaming establishment should not be, and is not required to provide a reason for restricting a patron's admission.  Plaintiff's motion should be denied.

DATED this 21st day of July, , 2008.

DOYLE BERMAN MURDY, P.C.

*/s/ M. Craig Murdy*

_____

M. Craig Murdy (7108)
Attorneys for Defendants

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on the 21st day of July, 2008, I served a true and correct copy of the

3   foregoing  document  titled:  **DEFENDANTS' RESPONSE TO MOTION FOR PARTIAL**

4   **SUMMARY JUDGMENT DETERMINING THAT DEFENDANTS HAD NO AUTHORITY**

5   **TO DEMAND THE PLAINTIFF LEAVE THE PREMISES (Doc. 11)** , by serving the following

6   parties  electronically  through  CM/ECF,  and  via  U.S.  Mail,  first-class  postage  prepaid,  to  the

7   following:

8                      Robert A. Nersesian
                       Nersesian & Sankiewicz
9                      528 South Eighth
                       Las Vegas, Nevada 89101
10                     Attorneys for Plaintiff

11

12                          */s/ Becky Finnell*

13                     _____
                       An Employee of Doyle Berman Murdy, P.C.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28